UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| CHRISTOPHER A. YOCKEY, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> STAFFING SOLUTIONS, INC. doing ) <br> business as EXPRESS EMPLOYMENT ) <br> PROFESSIONALS, ) <br> ) <br> Defendant. ) | No. 2:15-cv-00411-JMS-MJD |

## ORDER

Plaintiff Christopher A. Yockey was employed by Defendant Express Employment Professionals ("Express") as a temporary worker and assigned to the ADS, Inc. ("ADS") facility in Brazil, Indiana. Mr. Yockey initiated this litigation on behalf of himself and a class of similarly situated individuals, alleging that Express violated the Fair Labor Standards Act ("FLSA"). Mr. Yockey contends that Express failed to compensate its employees for earned overtime by improperly rounding time entries; automatically deducting 30-minute meal breaks when employees did not clock out and back in for lunch; and deducting 30 minutes for meal breaks, even when those breaks lasted for 20 minutes or less. Presently pending before the Court is a Second Amended Motion to Certify Fair Labor Standards Act Collective Action. [Filing No. 32.] For the reasons that follow, the Court denies Mr. Yockey's motion.

**I.
RELEVANT BACKGROUND**

Express is a staffing services company that provides, among other services, temporary workers to a variety of businesses. [Filing No. 33-1 at 1.] Mr. Yockey worked at ADS, located in

1

Brazil, Indiana, from October 18, 2015 through November 17, 2015. [Filing No. 33-1 at 2.]

According to Express:

> ADS provides a weekly timecard to employees staffed by Express' Associates, who use the timecard to punch in/punch out from a time clock provided by ADS. Each week, ADS provides to Express the timecard records for the temporary employees assigned to work at ADS by express. Express processes the payroll checks to these temporary employees based on the information provided by ADS.

[Filing No. 33-3 at 6.]

Mr. Yockey submitted a declaration alleging his experiences with Express' timekeeping practices. [Filing No. 33-1.] He alleges that he and other workers "were paid by Express on the basis of records maintained by the ADS Company and delivered to Express, recording our work hours on a time clock but rounding those hours in favor of Express so that we received less pay." [Filing No. 33-1 at 2.] He also alleges that he and "[he] believe[s] other similarly situated employees of Express working at ADS were not paid for recorded lunch breaks [sic] periods lasting twenty minutes of [sic] less." [Filing No. 33-1 at 2.] And finally, he alleges that when employees did not clock out for their lunch breaks, Express "routinely" deducted 30 minutes from their hours worked. [Filing No. 33-1 at 2.] Mr. Yockey submitted six time cards in support of these factual allegations. [Filing No. 33-5.]

Mr. Yockey submitted the following statements in his declaration in support of his allegation that similarly situated ADS workers were also subject to these timekeeping practices:

- "Similarly situated members of the Plaintiff Collective Group, work, or worked, for Express at the ADS Company facility in Brazil, Indiana, as employees paid by the hour," [Filing No. 33-1 at 2];

- "All employees occupied, and are occupying these positions have [sic] the same type of jobs with the same essential job responsibilities as I did," [Filing No. 33-1 at 2]; and

2

- "Upon information and belief, there are approximately two hundred thirty-three such persons who would fall within the proposed collective group." [Filing No. 33-1 at 3]

Mr. Yockey also submitted a document (hereinafter referred to as the "hours summary document") that includes 160 pages of what appear to be time entries or hours summaries for a variety of ADS or Express personnel. [Filing No. 34.]

## II.
## MOTION TO CERTIFY

### A. Collective Action Certification Standard

The FLSA provides that an action for unpaid minimum wages or unpaid overtime compensation may be brought "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). A collective action differs significantly from a class action brought pursuant to Federal Rule of Civil Procedure 23. The primary difference is that plaintiffs who wish to be included in a collective action must affirmatively opt in by filing a written consent with the Court, while members of a Rule 23 action are automatically included unless they affirmatively opt out. *Alvarez v. City of Chicago*, 605 F.3d 445, 448 (7th Cir. 2010). Accordingly, Rule 23 and its standards governing class certification do not apply to a collective action brought under the FLSA.

An employee may only bring a collective action on behalf of other employees who are similarly situated. 29 U.S.C. § 216(b). Therefore, to decide whether to initially certify a collective action, the Court must determine whether members of the proposed class are, in fact, similarly situated. *Campbell v. Advantage Sales & Mktg., LLC*, 2010 WL 3326752, *3-4 (S.D. Ind. 2010). Courts within this Circuit typically use a two-step inquiry. *Scott v. NOW Courier, Inc.*, 2012 WL 1072751, *7 (S.D. Ind. 2012); *Lallathin v. Ro Inc.*, 2010 WL 2640271, *1 (S.D. Ind. 2010).

The first step, also known as the notice stage, involves analysis of the pleadings and affidavits that have been submitted to determine whether notice should be given to potential class members. *Campbell*, 2010 WL 3326752 at *3. Although the first step of certification does not impose a high burden on the plaintiff, "this does not mean that the 'modest factual showing' is a mere formality." *Id.* at *4. It serves as an important and functional step in the certification process because "it would be a waste of the Court's and the litigants' time and resources to notify a large and diverse class only to later determine that the matter should not proceed as a collective action because the class members are not similarly situated." *Adair v. Wis. Bell, Inc.*, 2008 WL 4224360, *4 (E.D. Wis. 2008) (citation omitted).

The second step of certification occurs after discovery has largely been completed and allows a defendant the opportunity to seek decertification of the class or restrict the class because various putative class members are not, in fact, similarly situated as required by the FLSA. *Id.* at *3. Under this more stringent inquiry, courts typically consider the following factors: "(1) whether plaintiffs share similar or disparate factual and employment settings; (2) whether the various affirmative defenses available to the defendant would have to be individually applied to each plaintiff; and (3) fairness and procedural concerns." *Threatt v. CRF First Choice, Inc.*, 2006 WL 2054372, *5 (N.D. Ind. 2006).

The FLSA does not define the term "similarly situated" or instruct judges when to exercise their discretion and authorize notice to potential plaintiffs. *Raymer v. Mollenhauer*, 2010 WL 3259346, *1 (N.D. Ind. 2010). Courts have held, however, that being similarly situated does not require identical positions of the putative class members; instead, it requires that common questions predominate among the members of the class. *Campbell*, 2010 WL 3326752 at *3-4; *Alvarez*, 605 F.3d at 449.

When a plaintiff seeks conditional certification of an FLSA class after significant discovery, the Court can "'collapse the two stages of the analysis and deny certification outright.'" *Armstrong v. Wheeels Assured Delivery Systems, Inc.*, 2016 WL 1270208, *5 (S.D. Ind. 2016) (quoting *Purdham v. Fairfax County Pub. Schs.*, 629 F.Supp.2d 544, 547 (E.D. Va. 2009)). At this in-between stage, when substantial discovery has taken place, an intermediate level of scrutiny is applied. *Scott*, 2012 WL 1072751 at *7-8.

In this case, the parties rely upon Mr. Yockey's declaration, responses to a first set of written interrogatories, and written discovery. Express argues that "substantial discovery" has occurred and that the Court should apply the intermediate level of scrutiny to Mr. Yockey's motion. [Filing No. 40 at 4.] In his brief in support of his Second Amended Motion for Certification, Mr. Yockey assumes that the more lenient standard would apply. [Filing No. 44 at 10.] While the parties have described some of the discovery that has taken place, the Court has not been apprised of the full extent of discovery that has been conducted thus far.[1] Therefore, out of an abundance of caution, and because it does not impact the outcome of this motion, the Court applies the lenient standard here.

**B. Discussion**

Mr. Yockey seeks conditional certification of the following FLSA class:

> Current and former hourly employees of Staffing Solutions, Inc., d/b/a Express Employment Professionals (hereinafter "Express"), who worked for Express, at the location operated by ADS Company, and/or Hancor, Inc., in their Brazil, Indiana facility, at any time from three years prior to the filing of the Complaint in this action on December 15, 2015, to the present, who were not paid all wages owed, including overtime wages.

---

[1] Docket entries 19 and 28 suggest that substantial discovery may have taken place. A proposed Case Management Plan was tendered to the Court, and it indicates that fact discovery on liability was due to close on October 15, 2016. [Filing No. 19 at 6.] It is unclear, however, whether the proposed Case Management Plan was adopted, or whether the parties adhered to that deadline.

[Filing No. 44 at 5.] Mr. Yockey asserts that the collective action class members are similarly situated to himself. [Filing No. 44 at 4.] In support of his Motion to Certify, Mr. Yockey asserts that there are approximately 233 persons who would fall within the proposed collective group. [Filing No. 44 at 4.] He contends that all ADS workers staffed via Express were subject to the same time-rounding policies; that he and similarly situated individuals were not paid for meal breaks lasting less than 20 minutes; and that Express deducted 30 minutes from their time sheets when they did not clock out and clock in for lunch breaks. [Filing No. 44 at 4.] Mr. Yockey also contends that this case is appropriate for Court-facilitated notice and requests a list of former and current ADS workers to facilitate such notice. [Filing No. 44 at 11.]

In response, Express argues that Mr. Yockey has not met his burden of proof, because he has failed to provide any admissible evidence in support of his motion. [Filing No. 40 at 6.] Express contends that Mr. Yockey's factual allegations are all based upon his personal belief, without any evidentiary support. [Filing No. 40 at 6.] Express also argues that the nature of Mr. Yockey's FLSA allegations would require individualized assessment regarding numerous issues, including the number of shifts each employee worked, the length of the interruption in the meal break, and whether the additional compensable time caused the employee to work more than 40 hours in any given week. [Filing No. 40 at 14-15.] Finally, Express argues that if the Court grants conditional certification, a two-year statute of limitations should apply because Mr. Yockey has not shown that Express willfully violated the FLSA. [Filing No. 40 at 16.]

On reply, Mr. Yockey argues that Express has failed to challenge his factual allegations, and that they should therefore be deemed admitted. [Filing No. 45 at 3.] He also contends that his declaration should serve as the basis for a grant of certification, because it meets the threshold

6

required for showing that he is similarly situated to others in his proposed class. [Filing No. 45 at 4-8.]

*1. FLSA Requirements*

The FLSA provides the following regarding an employer's payment of overtime to its employees:

> Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a). Under the FLSA, employers have a duty to "exercise [their] control and see that [ ] work is not performed if it does not want it to be performed." 29 C.F.R. § 785.13. Employers "cannot sit back and accept the benefits [of an employee's work] without compensating for them." *Id.* But, an employer is not required to "pay for work it did not know about, and had no reason to know about." *Kellar v. Summit Seating Inc.*, 664 F.3d 169, 177 (7th Cir. 2011) (plaintiffs have the burden of showing that they performed overtime work for which they were not compensated). In sum, "an employer cannot be held liable for FLSA violations unless it has actual or constructive knowledge of an employee's overtime work." *Boelk v. AT&T Teleholdings, Inc.*, 2013 WL 3777251, * 6 (W.D. Wis. 2013). Constructive knowledge under the FLSA means that the employee "had reason to know" or "should have known" that its employees were performing uncompensated work. *Kellar*, 664 F.3d at 177. "Even if an employer has promulgated a rule against overtime or a procedure to report overtime, the employer may still be liable if it should have discovered by exercising reasonable diligence that its employees were not following the

7

rule." *Boelk*, 2013 WL 3777251 at *6 (citing 29 C.F.R. § 785.13; *Reich v. Department of Conservation & Natural Resource, State of Alabama*, 28 F.3d 1076, 1082 (11th Cir. 1994)).

The modest showing a plaintiff must make at this stage of the litigation "is not a mere formality." *Campbell*, 2010 WL 3326752 at *4. Instead, a plaintiff must provide some evidence that he and other potential plaintiffs "'together were victims of a common policy or plan that violated the law.'" *Vazquez v. Ferrara Candy Company*, 2016 WL 4417071, *3 (N.D. Ill. 2016) (quoting *Camilotes v. Resurrection Health Care Corp.*, 286 F.R.D. 339, 345 (N.D. Ill. 2012)). The plaintiff bears the burden of proving that he performed work for which he was not compensated. *See Melton v. Tippecanoe County*, 838 F.3d 814, 818 (7th Cir. 2016).

*2. Required Evidentiary Showing*

In support of his motion, Mr. Yockey submits six time cards, [Filing No. 33-5]; his declaration, [Filing No. 33-1]; and the hours summary document, [Filing No. 34]. In short, for the reasons that follow, Mr. Yockey's proffered evidence is insufficient to make even the modest showing required at the notice stage.

The Court notes at the outset that—setting aside the issue of similarly situated parties—it is questionable whether Mr. Yockey has shown that *he* was subject to a policy or practice that resulted in the loss of overtime compensation. First, the time cards submitted by Mr. Yockey do little to support his claims of any timekeeping violations. A sample time card is reproduced below:



[Filing No. 33-5 at 2.] Mr. Yockey does not attest to or provide any evidentiary support as to what the entries on these time cards reflect (*i.e.*, the entries on the right-hand side, versus the handwriting on the left); whose handwriting appears on the time card; or who prepared the time card and how it was prepared. He also does not identify which entries on these time cards provide evidence of a timekeeping violation, and if so, which type of violation is evident (*i.e.*, illegal rounding or meal time violations).

Second, Mr. Yockey's declaration does not specify what records Express received or relied upon in calculating the compensation due to its employees. According to Mr. Yockey, he was paid "by Express on the basis of records maintained by ADS company and delivered to Express."

9

[Filing No. 33-1 at 2.] He does not state whether these time cards were ever delivered to Express, nor whether these time cards were the "basis" upon which his compensation was calculated, and if so, which time card entries formed that basis.[2] He fails to provide any evidence that Express had actual or constructive knowledge of any potential overtime violations.

Third, while Mr. Yockey directs the Court to look at "payment records," [Filing No. 45 at 8], he does not appear to have submitted any pay stubs or other records of payment that would allow him to establish his actual compensation. While the hours summary document seems to include some indication of wages earned or payments made to some employees, Mr. Yockey does not allege that those records reflect anything regarding *his* payment.[3] [Filing No. 34.] The Court simply has very little basis upon which to conclude that Mr. Yockey was subject to a timekeeping violation.

Even assuming that Mr. Yockey could establish that he was subject to a policy or practice that resulted in the non-payment of overtime compensation, he has not established that other Express employees were similarly situated. While Mr. Yockey attests that the allegedly similarly situated employees "have the same type of jobs with the same essential job responsibilities," he identifies neither his own job responsibilities nor those of the 233 people he proposes would be members of the collective group. [Filing No. 33-1 at 2.] He likewise does not identify any job

---

[2] For example, the hours summary document provided by Mr. Yockey could represent the basis upon which compensation was calculated. [*See* Filing No. 34.]

[3] Mr. Yockey provides no explanation as to what the records contained in this document reflect, aside from its title: "Plaintiff's Submission of Summary of Pages Supplied by Defendant Evidencing Names of Persons who Worked at ADS/Hancor Facility." [Filing No. 34.] This document does not contain a list of employee names. Instead, it appears to be a collection of hours summaries or payment records for a variety of employees. The Court again notes that it will not comb the record in an attempt to make sense of the documents submitted by the parties, as "[j]udges are not like pigs, hunting for truffles buried in the record." *Casna v. City of Loves Park,* 574 F.3d 420, 424 (7th Cir. 2009).

titles, including his own.  He also provides no indication of the personal knowledge upon which he bases his statement that all of the jobs were similar, such as having worked closely with those other employees, having spoken to them about their job responsibilities, or having read any job descriptions.  Simply stating that all individuals have the same "type of jobs" is not sufficient to establish similarity.

Likewise, Mr. Yockey has not established that these employees were similarly situated as victims of an overtime violation.  Mr. Yockey's argument is this: if it happened to him, it must have happened to others.  Mr. Yockey provides no evidence that he personally witnessed other Express employees being subjected to the allegedly improper timekeeping practices.  He also provides no evidence that he has ever spoken to current or former Express employees regarding their timekeeping experiences.  While he submitted a document identified as "evidencing names of persons who worked at ADS/Hancor facility," he does not identify which of the individuals whose names appear in the submitted records would be part of his collective action group.

The Court notes a final deficiency in Mr. Yockey's request for certification: rounding practices and automatic meal deductions are not *per se* violations of the FLSA.  *See, e.g., Weil v. Metal Techs., Inc.,* 2016 WL 286396 at *6 (S.D. Ind. 2016) ("…rounding practices or policies to determine the employees' hours of pay are not prohibited by the FLSA" (citing 29 C.F.R. § 785.48(b)); *see also Cason v. Vibra Healthcare*, 2011 WL 1659381, *3 (E.D. Mich. 2011) ("the use of an automatic meal break deduction, in itself, does not violate the FLSA").  Mr. Yockey fails to provide any evidence that, even if a time-rounding or meal-deduction policy were in place, and

even if those policies were applied to him and other similarly situated employees, that such policies constituted violations of the FLSA.[4]

In sum, Mr. Yockey has not provided sufficient evidence to satisfy even the lenient standard at the notice stage of certification. Even assuming Mr. Yockey has established that he was subject to improper timekeeping practices, he has not provided adequate evidence that his proposed class members were all subject to a common policy or practice that violated the FLSA.

### III.
#### CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff's Second Amended Motion to Certify Fair Labor Standards Act Collective Action. [Filing No. 32.] Mr. Yockey's request that the Court order notice is **DENIED AS MOOT**.

The Court requests that the Magistrate Judge confer with the parties to address the possibility of an agreed resolution, or to establish a revised case management plan as to Mr Yockey's individual claim.

Date: 12/15/2016

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**

---

[4] While a failure to compensate employees for meal breaks of less than 20 minutes would constitute a violation of the FLSA, the deficiencies discussed above foreclose certification on that basis.